UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


PIONEER SURGICAL TECHNOLOGY, INC.,

        Plaintiff,

v.                                     Case No. 2:10-cv-251
                                        HON. GORDON J. QUIST
VIKINGCRAFT SPINE, INC., et al.,

        Defendants.

_____/


## OPINION

        In December of 2009, Pioneer Surgical Technology, Inc. ("Pioneer"), filed a complaint against VikingCraft Spine, Inc. ("VikingCraft"), and Eric Hansen ("Hansen"), maintaining there was diversity of citizenship jurisdiction. Pioneer alleged four claims against Vikingcraft and Hansen: (1) breach of contract; (2) unjust enrichment/quantum meruit, (3) conversion, and (4) breach of a non-compete agreement. On April 8, 2010, VikingCraft and Hansen filed a motion to dismiss for improper venue. The motion was fully briefed and on July 21, 2010, United States District Judge Gordon J. Quist issued an opinion granting the motion and dismissing the case without prejudice. Shortly after the case was dismissed, Pioneer filed a lawsuit in Marquette County Circuit Court alleging the same four claims against VikingCraft and Hansen. On September 30, 2010, that case was removed to this Court. It was determined that this case was related to the 2009 lawsuit and the matter was reassigned to United States District Judge Gordon J. Quist. On October 14, 2010, defendants filed a motion to transfer venue. The matter has been fully briefed and arguments were presented to the Court on December 10, 2010.

The claims made in the instant case are identical to those made in the case filed in this Court in December of 2009. Judge Quist's opinion of July 21, 2010, cannot be improved upon in outlining the background of this case. Judge Quist explained:

> Pioneer is a Michigan corporation with its principal place of business in Marquette, Michigan. (Am. Compl. ¶ 4.) Pioneer develops and manufactures medical devices, including specialized spine products, and it markets and sells its products through independent distributors pursuant to written Distributorship Agreements. (*Id*. ¶¶ 9, 10.)
>
> VikingCraft is a California corporation with its principal place of business in California. (*Id*. ¶ 5.) Hansen is a citizen of, and resides in, California and is the President and sole owner of VikingCraft. (*Id*. ¶ 6; Hansen 4/7/10 Decl. ¶ 3.) VikingCraft serves as a sales representative for various medical product companies. (Hansen Decl. ¶ 4.) It sells and markets medical products exclusively in California and has never sold any products, nor does it have any offices, employees, or representatives, in Michigan. (*Id.*)
>
> In approximately March 2006, a representative of Pioneer approached Hansen in California about the possibility of VikingCraft serving as a distributor of Pioneer's products in Southern California. (*Id*. ¶ 6.) In May 2006, VikingCraft and Pioneer executed a Distributorship Agreement (the "2006 Agreement") under which VikingCraft agreed to serve as Pioneer's Southern California distributor. Subsequently, on December 12, 2008, VikingCraft and Pioneer executed another Distributorship Agreement (the agreement at issue in this case) for VikingCraft to serve as Pioneer's California distributor (the " 2008 Agreement"). The 2008 Agreement provides that VikingCraft is entitled to commissions on "'Net Sales,'" determined as "'actual gross invoice price . . . less . . .credit allowances for returns and write-off of doubtful accounts.'" (Am. Compl. ¶ 13 (quoting 2008 Agreement Art. 1, Art. 5 § 5.6 (emphasis in original)).) The 2008 Agreement further provides that Pioneer is required to pay commissions to VikingCraft within 20 calendar days after the end of the month in which a sale is made. In some cases, this requirement could result in Pioneer paying a commission to VikingCraft before the customer actually pays Pioneer for the product. (*Id*. ¶ 14.) Recognizing the possibility that VikingCraft might receive a commission on a sale to which it is not entitled because the sale is subsequently determined to be uncollectible, the 2008 Agreement requires VikingCraft to return to Pioneer any commission for which Pioneer deems the invoice to be uncollectible. (*Id*.)

During the terms of the 2006 Agreement and the 2008 Agreement, VikingCraft sold Pioneer's products to only four customers in Southern California, one of which was Downey Regional Medical Center-Hospital, Inc. (Hansen 4/7/10 Decl. ¶ 9.) In 2009, VikingCraft sold approximately $750,000.00 of Pioneer products to Downey. (*Id*. ¶ 11.) On September 14, 2009, Downey filed a Chapter 11 petition in the United States Bankruptcy Court for the Central District of California. Thereafter, Pioneer determined that the invoices to Downey for the sales by VikingCraft were uncollectible and demanded that VikingCraft return the $285,579.29 in commissions that Pioneer had paid VikingCraft for the Downey sales. (2d Am. Compl. ¶¶ 15-16.) Pioneer terminated the 2008 Agreement after VikingCraft failed to return the Downey Commissions, and it alleges that it is entitled to a judgment in the amount of the Downey commissions. Pioneer further alleges that after it terminated the 2008 Agreement, VikingCraft failed to return $359,280.55 of its inventory and other property, giving rise to a claim of conversion. Finally, Pioneer alleges that VikingCraft has violated the non-competition provision of the 2008 Agreement following its termination by selling products of Pioneer's competitor to customers with whom VikingCraft had contact during the term of the 2008 Agreement.

In ruling that venue was improper in this district, Judge Quist explained:

On a motion to dismiss for improper venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper. *Prakash v. Clinton*, No. 08 Civ. 09482 (BSJ), 2010 WL 668816, at *3 (S.D.N.Y. Feb. 25, 2010) (*quoting French Transit v. Modern Coupon Sys.*, 858 F.Supp. 22, 25 (S.D.N.Y. 1994)). *See also J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08 CV 977, 2009 WL 385611, at *25 (N.D. Ohio Feb. 13, 2009) ("When a defendant seeks to dismiss a claim for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), plaintiff bears the burden of proving that venue is proper."). "[T]he court may examine facts outside of the complaint but 'must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff.'" *Receiver of the Assets of Mid-Am. Energy, Inc. v. Coffman*, – F. Supp. 2d – , 2010 WL 2085513, at *6 (M.D. Tenn. 2010)(*quoting Gone to the Beach, LLC v. Choicepoint Serv.*, 434 F. Supp. 2d 534, 536-37 (W.D. Tenn. 2006)). The plaintiff must show that venue is "proper for each claim and as to each defendant in order for the court to retain the action." *Verbis v. Iowa Dep't of Human Servs.*, 18 F. Supp. 2d 770,(W.D. Mich. 1998). *See also Shuman v. Computer Assocs. Int'l, Inc.*, 762 F. Supp. 114, 115 (E.D. Pa. 1991) ("In a case in which multiple defendants are joined, proper venue must be established as to each defendant. Similarly, in a case in

which multiple claims are joined, venue must be proper for each claim.") (internal citations omitted).

Proper venue requires that "a substantial part of the events or omissions giving rise" to Pioneer's claims must have occurred in this district. Section 1391(a)(2) does not require a plaintiff to file its complaint in the district where the most substantial events giving rise to the claim occurred; rather, venue is proper in "any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). Venue may thus be proper in two or more districts, even when most of the events occurred in one of the districts. *Setco Enters. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994) (noting that a court is not to "ask which district among two or more potential forums is the 'best' venue" in determining whether a particular venue is proper). "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). Therefore, "courts often focus on the relevant activities of the defendant, rather than the plaintiff, in determining where a substantial part of the underlying events occurred." *Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1, 4 (D.D.C. 2003) (*citing Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003)).

Presently before the Court is defendants' motion to transfer venue, which differs from a motion to dismiss for improper venue. Plaintiff maintains:

[T]he Court's prior decision that venue was not proper under 28 U.S.C. § 1391(a)(2) is entirely irrelevant to the issue before this Court because Defendants' voluntary removal of this action established the propriety of venue in this district pursuant to 28 U.S.C. § 1441(a). Rather, the only issue here is whether Defendants have met their substantial burden to establish that the "convenience of the parties and witnesses" and the "interest of justice" strongly weigh in favor of transferring this action from Pioneer's home forum to the Central District of California. It is clear they have not.

Plaintiff's Brief in Opposition to Defendants' Motion to Transfer Venue, p. 1.

Both parties recognize that defendants bear the burden of proving that the action should be transferred. To obtain a transfer pursuant to 28 U.S.C. § 1404(a), defendants must

establish that venue is proper in the transferor district, that plaintiff could have brought suit in the transferee court, and the transfer is for the convenience of the parties and witnesses and in the best interest of justice. *See Steelcase, Inc. v. Smart Technologies Inc.*, 336 F.Supp.2d 714, 719 (W.D. Mich. 2004). According to plaintiff, the focus of the current motion should be on "whether defendants have met their substantial burden to establish that a transfer of this action would serve the parties' and witnesses' convenience and be in the interest of justice." Plaintiff's Brief in Opposition to Defendants' Motion to Transfer Venue, p. 4.

One significant factor in determining whether venue should be transferred is plaintiff's choice of forum. Pioneer resides in the Western District of Michigan and has chosen to litigate this action in this district. Accordingly, Pioneer's choice of forum does support denying defendants' motion to transfer venue.

One of the most important factors in determining whether venue should be transferred is the convenience of witnesses. Pioneer states that all of its witnesses who will testify in this action reside in Michigan. Defendants respond that all of their witnesses who will testify in this action do not reside in Michigan and reside much closer to the Central District of California, where it is requested that this case be transferred. The parties disagree as to the location of non-party witnesses. According to Pioneer, there are no non-party witnesses whose testimony would be material. Defendants, on the other hand, maintain that there are numerous non-party witnesses who may be required to testify in this action and they all reside close to the Central District of California, if not within that district. Pioneer's argument that there are no non-party witnesses located in California who will be required to testify in this action is not persuasive. At this early stage of the litigation, trial witnesses cannot be definitively determined. A review of the claims in the complaint and the arguments made in the briefs filed with this Court strongly suggest to the undersigned that there will

be non-party witnesses who will be required to testify in this action. They are all likely located in the Central District of California or nearby.

Defendants have made a persuasive argument that there are material witnesses on Pioneer's breach of contract and unjust enrichment claims who reside and work in California and Phoenix, Arizona. Agents and employees of Pioneer and Downey Regional Medical Center who are located in California and Arizona are likely to be witnesses in this action. Defendants have also established that many of the witnesses who may be required to testify on the conversion claim are located in California. With respect to the non-compete claim, defendants have established that there are material non-party witnesses who reside in California that may be required to testify.

In the opinion of the undersigned, whether non-party witnesses are required to travel extensive distances if venue is not transferred is an important factor. Significant consideration should be given to the convenience of these non-party witnesses. This factor weighs heavily in favor of transferring venue. In addition, defendants' witnesses are all located in California or nearby. This factor also weighs heavily in favor of transferring venue. Pioneer maintains that its witnesses all live in Michigan. It is clear that defendants intend to call as witnesses some of Pioneer's employees who reside in California or Arizona. Considering the convenience to the parties and witnesses, this factor supports transferring venue in this case.

The other factor to be considered in determining whether or not venue should be transferred is the "interest of justice." In my opinion, this factor supports transfer of venue. The opinion issued by Judge Quist in the earlier case establishes that venue was improper in this district. The case could have been transferred to California at that time. That earlier opinion explained that there was little connection between Pioneer's state law claims and Michigan. This is a state law case which has little connection to Michigan. The case returned to this Court shortly after it was

dismissed through a circuitous route. The interest of justice will best be served by following the Court's earlier opinion that this case does not belong in this Court.

Considering all the factors presented by the motion to transfer venue, including this Court's earlier opinion finding that venue was improper in this district, defendants' motion to transfer venue will be granted and venue will be transferred to the United States District Court for the Central District of California.

IT IS SO ORDERED.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 7, 2011